# BEGIER, TRUSTEE *v.* INTERNAL REVENUE SERVICE

No. 89–393. Argued March 27, 1990—Decided June 4, 1990

MARSHALL, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, WHITE, BLACKMUN, STEVENS, O'CONNOR, and KENNEDY, JJ., joined. SCALIA, J., filed an opinion concurring in the judgment, *post*, p. 67.

*Paul J. Winterhalter* argued the cause and filed a brief for petitioner.

*Brian J. Martin* argued the cause for respondent. With him on the briefs were *Solicitor General Starr, Assistant Attorney General Peterson, Deputy Solicitor General Wallace,* and *Gary D. Gray.*

JUSTICE MARSHALL delivered the opinion of the Court.

This case presents the question whether a trustee in bankruptcy may "avoid" (*i. e.,* recover) from the Internal Revenue Service (IRS) payments of certain withholding and excise taxes that the debtor made before it filed for bankruptcy. We hold that the funds paid here were not the property of the debtor prior to payment; instead, they were held in trust by the debtor for the IRS. We accordingly conclude that the trustee may not recover the funds.

## I

American International Airways, Inc. (AIA), was a commercial airline. As an employer, AIA was required to withhold federal income taxes and to collect Federal Insurance Contributions Act (FICA) taxes from its employees' wages. 26 U. S. C. § 3402(a) (income taxes); § 3102(a) (FICA taxes). As an airline, it was required to collect excise taxes from its customers for payment to the IRS. § 4291. Because the amount of these taxes is "held to be a special fund in trust for the United States," § 7501, they are often called "trust-fund

taxes." See, *e. g.*, *Slodov* v. *United States*, 436 U. S. 238, 241 (1978). By early 1984, AIA had fallen behind in its payments of its trust-fund taxes to the Government. In February of that year, the IRS ordered AIA to deposit all trust-fund taxes it collected thereafter into a separate bank account. AIA established the account, but did not deposit funds sufficient to cover the entire amount of its trust-fund tax obligations. It nonetheless remained current on these obligations through June 1984, paying the IRS $695,000 from the separate bank account and $946,434 from its general operating funds. AIA and the IRS agreed that all of these payments would be allocated to specific trust-fund tax obligations.

On July 19, 1984, AIA petitioned for relief from its creditors under Chapter 11 of the Bankruptcy Code, 11 U. S. C. § 1101 *et seq.* (1982 ed.). AIA unsuccessfully operated as a debtor in possession for three months. Accordingly, on September 19, the Bankruptcy Court appointed petitioner Harry P. Begier, Jr., trustee, and a plan of liquidation in Chapter 11 was confirmed. Among the powers of a trustee is the power under § 547(b)[1] to avoid certain payments made by the

---

[1] This case is governed by 11 U. S. C. § 547(b) (1982 ed.), which reads: "Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

"(1) to or for the benefit of a creditor;

"(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

"(3) made while the debtor was insolvent;

"(4) made—

"(A) on or within 90 days before the date of the filing of the petition; or

"(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

"(i) was an insider; and

"(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

"(5) that enables such creditor to receive more than such creditor would receive if—

"(A) the case were a case under chapter 7 of this title;

"(B) the transfer had not been made; and

debtor that would "enabl[e] a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankrupt estate." H. R. Rep. No. 95–595, p. 177 (1977). Seeking to exercise his avoidance power, Begier filed an adversary action against the Government to recover the entire amount that AIA had paid the IRS for trust-fund taxes during the 90 days before the bankruptcy filing.

The Bankruptcy Court found for the Government in part and for the trustee in part. *In re American International Airways, Inc.*, 83 B. R. 324 (ED Pa. 1988). It refused to permit the trustee to recover any of the money AIA had paid out of the separate account on the theory that AIA had held that money in trust for the IRS. *Id.*, at 327. It allowed the trustee to avoid most of the payments that AIA had made out of its general accounts, however, holding that "only where a tax trust fund is actually established by the debtor and the taxing authority is able to trace funds segregated by the debtor in a trust account established for the purpose of paying the taxes in question would we conclude that such funds are not property of the debtor's estate." *Id.*, at 329. The District Court affirmed. App. to Pet. for Cert. A-22–A-26. On appeal by the Government, the Third Circuit reversed, holding that *any* prepetition payment of trust-fund taxes is a payment of funds that are not the debtor's property and that such a payment is therefore not an avoidable preference. 878 F. 2d 762 (1989).[2] We granted certiorari, 493 U. S. 1017 (1990), and we now affirm.

---

"(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

The statute has been amended to replace "property of the debtor" with "an interest of the debtor in property." See n. 3, *infra*. The old version of § 547(b) applies to this case, however, because AIA filed its bankruptcy petition before the effective date of the amendment.

[2] No other Court of Appeals has decided a case that presents the precise issue we decide here. The Ninth and District of Columbia Circuits have, however, resolved against the taxing authorities cases presenting related

## II

## A

Equality of distribution among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive pro rata shares of the debtor's property. See, *e. g.*, 11 U. S. C. § 726(b) (1982 ed.); H. R. Rep. No. 95–595, *supra*, at 177–178. Section 547(b) furthers this policy by permitting a trustee in bankruptcy to avoid certain preferential payments made before the debtor files for bankruptcy. This mechanism prevents the debtor from favoring one creditor over others by transferring property shortly before filing for bankruptcy. Of course, if the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated. The reach of § 547(b)'s avoidance power is therefore limited to transfers of "property of the debtor."

The Bankruptcy Code does not define "property of the debtor." Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate—the property available for distribution to creditors— "property of the debtor" subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings. For guidance,

---

issues. See *In re R & T Roofing Structures & Commercial Framing, Inc.*, 887 F. 2d 981, 987 (CA9 1989) (rejecting the Government's argument that assets the IRS seized from a debtor to satisfy a trust-fund tax obligation before the debtor filed its bankruptcy petition were assets held in trust for the Government under 26 U. S. C. § 7501, and therefore deciding that the transfer effected by the seizure involved "property of the debtor" and was not exempt from avoidance); *Drabkin* v. *District of Columbia*, 263 U. S. App. D. C. 122, 125, 824 F. 2d 1102, 1105 (1987) (reaching a similar conclusion with respect to a voluntary payment of withheld District of Columbia employee income taxes in a case governed by a provision of local law that "essentially mirror[ed]" § 7501).

then, we must turn to § 541, which delineates the scope of "property of the estate" and serves as the postpetition analog to § 547(b)'s "property of the debtor."[3]

Section 541(a)(1) provides that the "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 541(d) provides:

> "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not "property of the estate." Nor is such an equitable interest "property of the debtor" for purposes of § 547(b). As the parties agree, then, the issue in this case is whether the money AIA transferred from its general operating accounts to the IRS was property that AIA had held in trust for the IRS.

---

[3] To the extent the 1984 amendments to § 547(b) are relevant, they confirm our view that § 541 guides our analysis of what property is "property of the debtor" for purposes of § 547(b). Among the changes was the substitution of "an interest of the debtor in property" for "property of the debtor." 11 U. S. C. § 547(b) (1988 ed.). Section 547(b) thus now mirrors § 541's definition of "property of the estate" as certain "interests of the debtor in property." 11 U. S. C. § 541(a)(1) (1988 ed.). The Senate Report introducing a predecessor to the bill that amended § 547(b) described the new language as a "clarifying change." S. Rep. No. 98–65, p. 81 (1983). We therefore read both the older language ("property of the debtor") and the current language ("an interest of the debtor in property") as coextensive with "interests of the debtor in property" as that term is used in 11 U. S. C. § 541(a)(1) (1988 ed.).

## B

We begin with the language of 26 U. S. C. § 7501, the Internal Revenue Code's trust-fund tax provision: "Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States." The statutory trust extends, then, only to "the amount of tax so collected or withheld." Begier argues that a trust-fund tax is not "collected or withheld" until specific funds are either sent to the IRS with the relevant return or placed in a segregated fund. AIA neither put the funds paid from its general operating accounts in a separate account nor paid them to the IRS before the beginning of the preference period. Begier therefore contends that no trust was ever created with respect to those funds and that the funds paid to the IRS were therefore property of the debtor.

We disagree. The Internal Revenue Code directs "every person receiving any payment for facilities or services" subject to excise taxes to "collect the amount of the tax from the person making such payment." § 4291. It also requires that an employer "collec[t]" FICA taxes from its employees "by deducting the amount of the tax from the wages *as and when paid*." § 3102(a) (emphasis added). Both provisions make clear that the act of "collecting" occurs at the time of payment—the recipient's payment for the service in the case of excise taxes and the employer's payment of wages in the case of FICA taxes. The mere fact that AIA neither placed the taxes it collected in a segregated fund nor paid them to the IRS does not somehow mean that AIA never collected the taxes in the first place.

The same analysis applies to taxes the Internal Revenue Code requires that employers "withhold." Section 3402(a) (1) requires that "every employer making payment of wages shall deduct and withhold *upon such wages* [the employee's federal income tax]." (Emphasis added.) Withholding thus

occurs at the time of payment to the employee of his net wages. S. Rep. No. 95–1106, p. 33 (1978) ("[A]ssume that a debtor owes an employee \$100 for salary on which there is required withholding of \$20. If the debtor paid the employee \$80, there has been \$20 withheld. If, instead, the debtor paid the employee \$85, there has been withholding of \$15 (which is not property of the debtor's estate in bankruptcy)"). See *Slodov*, 436 U. S., at 243 (stating that "[t]here is no general requirement that the withheld sums be segregated from the employer's general funds," and thereby necessarily implying that the sums are "withheld" whether or not segregated). The common meaning of "withholding" supports our interpretation. See Webster's Third New International Dictionary 2627 (1981) (defining "withholding" to mean "the act or procedure of deducting a tax payment from income *at the source*") (emphasis added).

Our reading of § 7501 is reinforced by § 7512, which permits the IRS, upon proper notice, to require a taxpayer who has failed timely "to collect, truthfully account for, or pay over [trust-fund taxes]," or who has failed timely "to make deposits, payments, or returns of such tax," § 7512(a)(1), to "deposit such amount in a separate account in a bank . . . and . . . keep the amount of such taxes in such account until payment over to the United States," § 7512(b). If we were to read § 7501 to mandate segregation as a prerequisite to the creation of the trust, § 7512's requirement that funds be segregated in special and limited circumstances would become superfluous. Moreover, petitioner's suggestion that we read a segregation requirement into § 7501 would mean that an employer could avoid the creation of a trust simply by refusing to segregate. Nothing in § 7501 indicates, however, that Congress wanted the IRS to be protected only insofar as dictated by the debtor's whim. We conclude, therefore, that AIA created a trust within the meaning of § 7501 at the moment the relevant payments (from customers to AIA for ex-

cise taxes and from AIA to its employees for FICA and income taxes) were made.

### C

Our holding that a trust for the benefit of the IRS existed is not alone sufficient to answer the question presented by this case: whether the *particular dollars* that AIA paid to the IRS from its general operating accounts were "property of the debtor." Only if those particular funds were held in trust for the IRS do they escape characterization as "property of the debtor." All § 7501 reveals is that AIA at one point created a trust for the IRS; that section provides no rule by which we can decide whether the assets AIA used to pay the IRS were assets belonging to that trust.

In the absence of specific statutory guidance on how we are to determine whether the assets transferred to the IRS were trust property, we might naturally begin with the common-law rules that have been created to answer such questions about other varieties of trusts. Unfortunately, such rules are of limited utility in the context of the trust created by § 7501. Under common-law principles, a trust is created *in property;* a trust therefore does not come into existence until the settlor identifies an ascertainable interest in property to be the trust res. G. Bogert, Law of Trusts and Trustees § 111 (rev. 2d ed. 1984); 1A W. Fratcher, Scott on Trusts § 76 (4th ed. 1987). A § 7501 trust is radically different from the common-law paradigm, however. That provision states that "the *amount* of [trust-fund] tax . . . collected or withheld shall be held to be a special fund in trust for the United States." (Emphasis added.) Unlike a common-law trust, in which the settlor sets aside particular *property* as the trust res, § 7501 creates a trust in an abstract "amount"—a dollar *figure* not tied to any particular assets—rather than in the actual dollars withheld.[4] Common-law tracing rules, designed

---

[4] The general common-law rule that a trust is not created absent a designation of particular property obviously does not invalidate § 7501's cre-

for a system in which particular property is identified as the trust res, are thus unhelpful in this special context.

Federal law delineating the nature of the relationship between the § 7501 trust and preferential transfer rules is limited. The only case in which we have explored that topic at any length is *United States* v. *Randall*, 401 U. S. 513 (1971), a case dealing with a postpetition transfer of property to discharge trust-fund tax obligations that the debtor had accrued prepetition. There, a court had ordered a debtor in possession to maintain a separate account for its withheld federal income and FICA taxes, but the debtor did not comply. When the debtor was subsequently adjudicated a bankrupt, the United States sought to recover from the debtor's general assets the amount of withheld taxes ahead of the expenses of the bankruptcy proceeding. The Government argued that the debtor held the amount of taxes due in trust for the IRS and that this amount could be traced to the funds the debtor had in its accounts when the bankruptcy petition was filed. The trustee maintained that no trust had been created because the debtor had not segregated the funds. The Court declined directly to address either of these contentions. *Id.*, at 515. Rather, the Court simply refused to permit the IRS to recover the taxes ahead of administrative expenses, stating that "the statutory policy of subordinating taxes to costs and expenses of administration would not be served by creating or enforcing trusts which eat up an estate, leaving little or nothing for creditors and court officers whose goods and services created the assets." *Id.*, at 517.

In 1978, Congress fundamentally restructured bankruptcy law by passing the new Bankruptcy Code. Among the changes Congress decided to make was a modification of the rule this Court had enunciated in *Randall* under the old Bankruptcy Act. The Senate bill attacked *Randall* directly, providing in § 541 that trust-fund taxes withheld or collected

---

ation of a trust in the "amount" of withheld taxes. The common law of trusts is not binding on Congress.

prior to the filing of the bankruptcy petition were not "property of the estate." See S. Rep. No. 95–1106, at 33. See also *ibid.* ("These amounts will not be property of the estate regardless of whether such amounts have been segregated from other assets of the debtor by way of a special account, fund, or otherwise, or are deemed to be a special fund in trust pursuant to provisions of applicable tax law") (footnote omitted). The House bill did not deal explicitly with the problem of trust-fund taxes, but the House Report stated that "property of the estate" would not include property held in trust for another. See H. R. Rep. No. 95–595, at 368. Congress was unable to hold a conference, so the Senate and House floor managers met to reach compromises on the differences between the two bills. See 124 Cong. Rec. 32392 (1978) (remarks of Rep. Edwards); Klee, Legislative History of the New Bankruptcy Law, 28 DePaul L. Rev. 941, 953–954 (1979). The compromise reached with respect to the relevant portion of § 541, which applies to postpetition transfers, was embodied in the eventually enacted House amendment and explicitly provided that "in the case of property held in trust, the property of the estate includes the legal title, but not the beneficial interest in the property." 124 Cong. Rec., at 32417 (remarks of Rep. Edwards). Cf. *id.*, at 32363 (text of House amendment). Accordingly, the Senate language specifying that withheld or collected trust-fund taxes are not part of the bankruptcy estate was deleted as "unnecessary since property of the estate does not include the beneficial interest in property held by the debtor as a trustee. Under [§ 7051], the amounts of withheld taxes are held to be a special fund in trust for the United States." *Id.*, at 32417 (remarks of Rep. Edwards).[5]

---

[5] Because of the absence of a conference and the key roles played by Representative Edwards and his counterpart floor manager Senator De-Concini, we have treated their floor statements on the Bankruptcy Reform Act of 1978 as persuasive evidence of congressional intent. See, *e. g.,* *Commodity Futures Trading Comm'n* v. *Weintraub*, 471 U. S. 343, 351

Representative Edwards discussed the effects of the House language on the rule established by *Randall*, indicating that the House amendment would supplant that rule:

"[A] serious problem exists where 'trust fund taxes' withheld from others are held to be property of the estate where the withheld amounts are commingled with other assets of the debtor. The courts should permit the use of reasonable assumptions under which the Internal Revenue Service, and other tax authorities, can demonstrate that amounts of withheld taxes are still in the possession of the debtor at the commencement of the case." *Ibid.*

The context of Representative Edwards' comment makes plain that he was discussing whether a *post*petition payment of trust-fund taxes involved "property of the estate." This focus is not surprising given that *Randall*, the case Congress was addressing, involved a postpetition demand for payment by the IRS. But Representative Edwards' discussion also applies to the question whether a *pre*petition payment is made from "property of the debtor." We have explained that "property of the debtor" is that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings. *Supra*, at 58. The same "reasonable assumptions" therefore apply in both contexts.

The strict rule of *Randall* thus did not survive the adoption of the new Bankruptcy Code. But by requiring the IRS to "demonstrate that amounts of taxes withheld are still in the possession of the debtor at the commencement of the case [*i. e.*, at the filing of the petition]," 124 Cong. Rec., at 32417 (remarks of Rep. Edwards), Congress expected that the IRS would have to show *some* connection between the § 7501 trust

---

(1985). Cf. 124 Cong. Rec. 32391 (1978) (remarks of Rep. Rousselot) (expressing view that remarks of floor manager of the Act have "the effect of being a conference report").

and the assets sought to be applied to a debtor's trust-fund tax obligations. See *United States* v. *Whiting Pools, Inc.*, 462 U. S. 198, 205, n. 10 (1983) (IRS cannot exclude funds from the estate if it cannot trace them to § 7501 trust property). The question in this case is how extensive the required nexus must be. The Bankruptcy Code provides no explicit answer, and Representative Edwards' admonition that courts should "permit the use of reasonable assumptions" does not add much. The House Report does, however, give sufficient guidance regarding those assumptions to permit us to conclude that the nexus requirement is satisfied here. That Report states:

"A payment of withholding taxes constitutes a payment of money held in trust under Internal Revenue Code § 7501(a), and thus will not be a preference because the beneficiary of the trust, the taxing authority, is in a separate class with respect to those taxes, if they have been properly held for payment, as they will have been if the debtor is able to make the payments." H. R. Rep. No. 95–595, *supra*, at 373.[6]

Under a literal reading of the above passage, the bankruptcy trustee could not avoid *any* voluntary prepetition payment of trust-fund taxes, regardless of the source of the funds. As the House Report expressly states, the limitation that the funds must "have been properly held for payment" is satisfied "if the debtor is able to make the payments." The debtor's act of voluntarily paying its trust-fund tax obligation

---

[6] Petitioner's claim that this legislative history is irrelevant because the House Bill was not enacted is in error. The exact language to which the quoted portion of the House Report refers was enacted into law. Compare § 547(b) with H. R. 8200, 95th Cong., 1st Sess., § 547(b) (1977). The version of § 541 that was eventually enacted *is* different from the original House bill, but only in that it makes explicit rather than implicit that "property of the estate" does not include the beneficiary's equitable interest in property held in trust by the debtor. Compare § 541(d) with H. R. 8200, *supra*, § 541(a)(1).

therefore is alone sufficient to establish the required nexus between the "amount" held in trust and the funds paid.

We adopt this literal reading. In the absence of any suggestion in the Bankruptcy Code about what tracing rules to apply, we are relegated to the legislative history. The courts are directed to apply "reasonable assumptions" to govern the tracing of funds, and the House Report identifies one such assumption to be that any voluntary prepetition payment of trust-fund taxes out of the debtor's assets is not a transfer of the debtor's property. Nothing in the Bankruptcy Code or its legislative history casts doubt on the reasonableness of that assumption. Other rules might be reasonable, too, but the only evidence we have suggests that Congress preferred this one. We see no reason to disregard that evidence.

### III

We hold that AIA's payments of trust-fund taxes to the IRS from its general accounts were not transfers of "property of the debtor," but were instead transfers of property held in trust for the Government pursuant to § 7501. Such payments therefore cannot be avoided as preferences. The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE SCALIA, concurring in the judgment.

Representative Edwards, the House floor manager for the bill that enacted the Bankruptcy Code, said on the floor that "[t]he courts should permit the use of reasonable assumptions" regarding the tracing of tax trust funds. 124 Cong. Rec. 32417 (1978). We do not know that anyone except the presiding officer was present to hear Representative Edwards. Indeed, we do not know for sure that Representative Edwards' words were even uttered on the floor rather than inserted into the Congressional Record afterwards. If Representative Edwards did speak these words, and if there were others present, they must have been surprised to hear

him talking about the tracing of 26 U. S. C. § 7501 tax trust funds, inasmuch as the bill under consideration did not relate to the Internal Revenue Code but the Bankruptcy Code, and contained no provision even mentioning trust-fund taxes. Only the Senate bill, and not the House proposal, had mentioned trust-fund taxes—and even the former had said nothing whatever about the *tracing* of tax trust funds. See S. 2266, 95th Cong., 2d Sess., § 541 (1978). Only the Senate *Committee Report* on the *unenacted* provision of the Senate bill had discussed that subject. See S. Rep. No. 95–1106, p. 33 (1978).

Nonetheless, on the basis of Representative Edwards' statement, today's opinion concludes that "[t]he courts are *directed*" (presumably it means directed by the entire Congress, and not just Representative Edwards) "to apply 'reasonable assumptions' to govern the tracing of funds." *Ante*, at 67 (emphasis added). I do not agree. Congress conveys its directions in the Statutes at Large, not in excerpts from the Congressional Record, much less in excerpts from the Congressional Record that do not clarify the text of any pending legislative proposal.

Even in the absence of direction to do so, however, I certainly think we should apply reasonable assumptions to govern the tracing of funds. Unfortunately, that still does not answer the question before us here. One "traces" a fund only after one identifies the fund in the first place. The problem here is not "following the res" of the tax trust, but identifying the res to begin with. Seeking to come to grips with this point, the Court once again resorts to legislative history, this time even further afield. It relies upon the House Report on what later became 11 U. S. C. § 547, which says:

> "A payment of withholding taxes constitutes a payment of money held in trust under Internal Revenue Code § 7501(a), and thus will not be a preference because the beneficiary of the trust, the taxing authority, is in a sep-

arate class with respect to those taxes, if they have been properly held for payment, as they will have been if the debtor is able to make the payments." H. R. Rep. No. 95–595, p. 373 (1977).

The Court decides this case by "adopting" "a literal reading" of the above language. *Ante*, at 66. I think it both demeaning and unproductive for us to ponder whether to adopt literal or not-so-literal readings of Committee Reports, as though they were controlling statutory text. Moreover, even applying the lax legislative-history standards of recent years, this Committee Report should not be considered relevant. If a welfare bill conditioned benefits upon a certain maximum level of "income," courts might well (regrettably) regard as authoritative the Committee Report's statement that "income" means "income as computed under the Internal Revenue Code"; but surely they would not regard as authoritative its statement that a particular class of receipt *constitutes* income under the Internal Revenue Code. Authoritativeness on the latter sort of point is what the Court accepts here. The proposed (and ultimately enacted) provision of law to which this Committee Report pertained was the general provision of the Bankruptcy Code setting forth the five conditions for a voidable preference, reading in part as follows:

"Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor —

"(1) to or for the benefit of a creditor;

"(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

"(3) made while the debtor was insolvent;

"(4) made . . . on or within 90 days before the date of the filing of the petition . . . ; and

"(5) that enables such creditor to receive more than such creditor would receive [under a chapter 7 bank-

ruptcy distribution]." H. R. 8200, 95th Cong., 2d Sess., § 547(b) (1977); see 11 U. S. C. § 547(b).

The Committee Report's discussion of withholding taxes paid during the preference period presumably clarifies the meaning of the phrase "property of the debtor" in this text. If that is authoritative concerning the construction and effect of § 7501, imagine what other laws concerning "property of the debtor" could also have been enacted through discussion in this Committee Report. The matter seems to me plainly too far beyond the immediate focus of the legislation to be deemed resolved by the accompanying Committee Report. It was certainly thoughtful of whoever drafted the report to try to clear up the issue of what kind of an estate, legal or equitable, the debtor possesses in trust-fund taxes that are paid, but that discussion is a kind of legislative-history "rider" that even the most ardent devotees of legislative history should ignore.

If the Court had applied to the text of the statute the standard tools of legal reasoning, instead of scouring the legislative history for some scrap that is on point (and therefore *ipso facto* relevant, no matter how unlikely a source of congressional reliance or attention), it would have reached the same result it does today, as follows: Section 7501 obviously intends to give the United States the advantages of a trust beneficiary with respect to collected and withheld taxes. Unfortunately, it does not always succeed in doing so. A trust without a res can no more be created by legislative decree than can a pink rock-candy mountain. In the nature of things no trust exists until a res is identified. Ordinarily the res is identified by the settlor of the trust; in the case of § 7501 it is initially identified (if at all) by the statute, subject (as I shall discuss) to later reidentification by the taxpayer. Where the taxes subject to the trust-fund provision of § 7501 are *collected* taxes, the statute plainly identifies the res: it is the collections. There may be difficulty in tracing them, but there is no doubt that they exist. Where, however, the

taxes subject to the trust-fund provision are *withheld* taxes, the statute provides no clear identification. When I pay a worker $90 there is no clearly identifiable locus of the $10 in withheld taxes that I do *not* pay him. Indeed, if my total assets at the time of the payment are $90 there is no conceivable locus.

We may have to grapple at some later date with the question whether the lack of immediate identification means that no trust arises, or rather that § 7501 creates some hitherto unheard-of floating trust in an unidentified portion of the taxpayer's current or later-acquired assets. We do not have to reach that question today, because even though identification was not made by the statute immediately, it *was* made by the taxpayer when it wrote a check upon a portion of a designated fund to the Government. (It is clear from the statutory scheme that the taxpayer has the power to identify which portion of its assets constitutes the trust fund; indeed, 26 U. S. C. § 7512 permits the Government to compel such identification where it has not been made.) Even if no trust existed before that check was written, it is clear that a trust existed then. See 1 W. Fratcher, Scott on Trusts § 26.5 (4th ed. 1987) (promise to create trust becomes effective when settlor transfers or otherwise designates res as trust property).

The designation here, however, occurred within the 90-day preference period. Ordinarily, the debtor's alienation of his equitable interest by declaring a trust would constitute a preference. It seems to me, however, that one must at least give this effect to § 7501's clearly expressed but sometimes ineffectual intent to create an *immediate* trust: If and when the trust res is identified from otherwise unencumbered assets, the trust should be deemed to have been in existence from the time of the collection or withholding. Thus, the designation of res does not constitute a preference, and the funds paid were not part of the debtor's estate.

For these reasons, I concur in the judgment of the Court.